(March 10, 1905.)

## SHELBY v. FARMERS' CO-OPERATIVE DITCH COMPANY.

[80 Pac. 222.]

DITCH COMPANIES—CORPORATIONS OR PERSONS—HOW MAY ENFORCE PAYMENT FOR USE OF WATER.

1. A canal or ditch company, corporation or person owning and operating a canal or ditch in this state, may require the claimants of water from such canal or ditch to pay or secure to be paid in advance  before such canal or ditch company, corporation or per-

son owning or operating such ditch or canal can be required to furnish any water from such ditch or canal to any of the users thereof for any purpose. (Sess. Laws 1899, p. 382, sec. 19.)

2. If such canal or ditch company or person fails to require such payment or security therefor, and does furnish any of the users of the waters of such canal or ditch with water for any purpose, the remedy is by suit at law to enforce such payment and not by rule or regulation refusing to furnish water until such arrearages are paid. (Rev. Stats. 1887, sec. 3203.)

(Syllabus by the court.)

APPEAL from District Court of Canyon County. Honorable George H. Stewart, Judge.

Action to restrain respondent from conveying three hundred and twenty inches of water past his headgate to which he alleges title. Judgment for defendant, from which plaintiff appeals. Reversed.

Alfred A. Fraser, for Appellant.

The court erred in finding as a conclusion of law "that it is a reasonable rule and regulation of the company that, before turning water out to plaintiff he shall be required to pay the company his proportionate share of the operating and maintaining expenses of the ditch for the previous irrigating season." There was no evidence introduced upon the trial of this case in the court below which can sustain the above finding. There is no evidence introduced that the company ever made such a rule or regulation, and if such a rule or regulation had been regularly adopted by the board of directors of the corporation it would be void, for the reason that such a rule, when adopted by a company, must be general in its application and apply to all persons alike. The company is not at liberty to single out the plaintiff herein and pass a rule or regulation which would apply only in his case. (*Owensboro Gas Light Co. v. Hilderbrand,* 42 Ky. Law Rep. 983, 42 S. W. 351.) There is no statute in this state granting to water companies the right to adopt any such rule or regulation. The laws governing the distribution and use of water provide the remedy and the manner in which companies engaged in this business must furnish water and col-

lect the rates therefor.   (Laws 1899, Fifth Sess., p. 382, sec. 19;
Rev. Stats. 1887, sec. 3203.) Even in case where there is a statute
providing that a company shall have the right to refuse to de-
liver water until the past rent due has been paid, it has been
held that this rule does not apply when there is a dispute as
to the amount which is due said corporation or company for
its past services. (*Sickles v. Manhattan Gas Light Co.,*
64 How. Pr. 33; affirmed in 66 How. Pr. 304.)   When
a dispute arises between the company and a consumer,
the latter is entitled to have his right investigated by the
courts.   In such a case an injunction will be granted to pre-
vent cutting off the supply of gas until the cause is tried.
(*Wood v. Auburn,* 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376.)
The company is not the sole judge of the validity of the bill,
and cannot deprive the plaintiff of his right to resort to the
courts. (*Smith v. Gold & Stock Tel. Co.,* 42 Hun, 454; *Sickles
v. Manhattan Gas Light Co.,* 64 How. Pr. 35; *Morey v. Met-
ropolitan Gaslight Co.,* 6 Jones & S. 185; *State ex rel. Webster
v. Nebraska Telephone Co.,* 17 Neb. 126, 52 Am. Rep. 405, 22
N. W. 237; *American Water Works Co. v. State ex rel. Walker,*
46 Neb. 194, 50 Am. St. Rep. 610, 30 L. R. A. 448, 64 N. W.
711; *Shepard v. Milwaukee Gaslight Co.,* 6 Wis. 539, 70 Am. Dec.
479.)   The transfer of the property of the Idaho Irrigating and
Colonization Company to the Farmers' Co-operative Ditch Com-
pany was absolutely void as against public policy, and gave to
the defendant herein no rights whatever in or to said property,
or any part thereof, and no right to collect rates from this
plaintiff or anyone else for the use of water out of said ditch.
A corporation engaged in a public or *quasi* public business
cannot transfer its property or franchises to any other corpo-
ration without an express act of the legislature, authorizing
such sale or transfer. This proposition is clearly maintained
in *Thomas v. Railroad Co.,* 101 U. S. 71, 25 L. ed. 950.   That
was the case of a lease of railroad and franchise. The court
said, speaking through Mr. Justice Miller: "Where a corpora-
tion like a railroad company has granted to it by charter a
franchise intended in large measure to be exercised for the pub-
lic good, the due performance of those functions being the con-

sideration of the public grant, any contract which disables the corporation from performing those functions—which undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes—is a violation of the contract with the state, and is void as against public policy. (*Visalia Gas & Electric Light Co. v. Sims et al.,* 104 Cal. 326, 43 Am. St. Rep. 105, 37 Pac. 1042; *Central Transfer Co. v. Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. Rep. 478, 35 L. ed. 55; *Oregon Ry. & Nav. Co. v. Oregonian Ry. Co.,* 130 U. S. 1, 9 Sup. Ct. Rep. 409, 32 L. ed. 839; *People v. Chicago Gas Co.,* 130 Ill. 268, 17 Am. St. Rep. 319, 22 N. E. 798, 8 L. R. A. 497; *Gibbs v. Gas Co.,* 130 U. S. 411, 9 Sup. Ct. Rep. 553, 32 L. ed. 985.)

Smith & Plowhead, for Respondent.

We ask the court to consider, in the first place, the specifications of error as set forth in appellant's brief, as we contend that under the statutes of this state and the decisions of this court, the findings in this case and the judgment cannot be considered for insufficiency of the evidence to sustain the same, for the reason that appellant has not specified in the transcript or bill of exceptions the particulars in which the evidence is insufficient to sustain said findings. We understand the rule to be that, in order for the appellate court to review the findings or judgment for insufficiency of the evidence to sustain the same, the party specifying such insufficiency must, in his transcript or bill of exceptions, set forth the particulars in which the evidence is insufficient to sustain such findings and judgment. (See Rev. Stats., sec. 4428; *O'Connor v. Van Hoy et al.,* 29 Or. 505, 45 Pac. 762; *Snell v. Payne,* 115 Cal. 218, 46 Pac. 1069; *Warren v. Stoddart et al.,* 6 Idaho, 692, 59 Pac. 540; *In re Fath's Estate,* 132 Cal. 609, 64 Pac. 995; *Hollister v. State et al.,* 9 Idaho, 8, 71 Pac. 541.) Can the respondent reasonably refuse said water to said appellant until he has paid his proportionate share of the cost of maintaining and operating said canal for the previous season, or is respondent left to its legal remedy alone to collect unpaid assessments? A water company may make reasonable rules for the govern-

ment of its customers' supply of water as a penalty for violation thereof, when such rules are embodied in its contract with its consumers, or such contract is made subject to the rules and the customer is furnished with a copy of such rules before violation thereof and before his water was shut off. (*Shiras v. Ewing,* 48 Kan. 170, 29 Pac. 320; *Tacoma Hotel Co. v. Tacoma Light & Water Co.,* 3 Wash. 316, 28 Am. St. Rep. 35, 28 Pac. 51, 14 L. R. A. 669; *American Water Works Co. v. State,* 46 Neb. 194, 50 Am. St. Rep. 618, 64 N. W. 711, 30 L. R. A. 448; *Middlesex Water Co. v. Knappman Whiting Co.,* 64 N. J. L. 240, 81 Am. St. Rep. 467-488, 45 Atl. 692, 49 L. R. A. 572; *Walanga Water Co. v. Wolfe,* 99 Tenn. 429, 63 Am. St. Rep. 841, 41 S. W. 1060.)   The next question raised is that the Idaho Irrigating and Colonization Company had no right to transfer its property to the respondent company or others.   This is also a new question here, and we do not think that this court will consider it as presented, as the appellant has recognized the transfer in his pleadings, is seeking to show that he has rights which this respondent company must recognize, and asks for affirmative relief against this company, without suggesting or in any way objecting to said transfer; he does not show that he is injured in any way, that he is a creditor of the old company, a stockholder, or in any way interested in it.   It is a well-established fact that corporations, organized as the evidence shows this company was organized, are private corporations, and in no sense come under the provisions of the rule laid down in the cases cited in appellant's brief.   We have examined those cases, and not one is applicable to the facts as disclosed by the evidence in this case.   In support of our contention, we beg leave to cite the following authorities: *State v. Western Irrigating Canal Co.,* 40 Kan. 96, 10 Am. St. Rep. 166, 19 Pac. 349; *Miners' Ditch Co. v. Zellerbach,* 37 Cal. 543, 99 Am. Dec. 300; *Willamette Woolen Mfg. Co. v. Bank of British Columbia,* 119 U. S. 191, 7 Sup. Ct. Rep. 187, 30 L. ed. 384; *Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co.,* 127 N. Y. 252, 24 Am. St. Rep. 448, 27 N. E. 831; *Benbow v. Cook,* 115 N. C. 324, 44 Am. St. Rep. 454, 20 S. E. 453; *Morisette v. Howard,* 62 Kan. 463, 63 Pac. 756.

STOCKSLAGER, C. J.—This is an appeal from the judgment of the district court of Canyon county. Plaintiff (appellant) filed his complaint alleging that defendant is a corporation incorporated under the laws of Idaho. "That defendant is the successor in interest of the ditch and water rights of the Idaho Irrigation and Colonization Company, incorporated under the laws of the former territory of Utah, and now owns and is in possession of the ditch and water rights of said Idaho Irrigation and Colonization Company, subject to the rights of plaintiff made to appear. That on and prior to the 8th of December, 1887, the Idaho Irrigation and Colonization Company was the owner of a large irrigating canal and the right to the use of the waters of Boise river for irrigation purposes in the then county of Ada, now Canyon, to the amount of many thousand inches, . . . . the exact amount of which plaintiff is unable to state; and said corporation was at the date last mentioned and during the irrigation season of each year carrying said water through their said canal and distributing the same on lands lying along the northern side of Boise river, . . . . and was during the said years, to wit, 1887, prior thereto and long since engaged in the business of carrying waters for sale and rental, . . . . to which said Idaho Irrigation and Colonization Company had a good and lawful right. That on December 8, 1887, plaintiff then contemplating the entry of section 3, . . . . lying under said ditch as a desert entry, purchased from said Idaho Irrigation and Colonization Company, for the irrigation and reclamation of four hundred and eighty acres of said section 3, a perpetual right to the use of three hundred and twenty inches of the waters flowing and to flow into said canal, and thereafter in the year 1892, plaintiff began the use of part of the waters to which he was entitled, and each year thereafter continued to use a portion thereof on said section 3 for irrigating purposes, until the year 1894, when plaintiff had sufficient crops under cultivation to demand the use of the whole amount of water to which he was entitled from said canal, when he began to and did use the whole amount of said waters to which he was entitled from said canal, and each and every year since down to the present

time has continued to use the whole amount of water so pur-
chased for the irrigation of crops, etc. That the said land
will not produce remunerative crops without water for irriga-
tion, and if plaintiff were now deprived of water for irrigation,
the fruit trees, alfalfa and other crops growing thereon would
dry up, die and become a total loss to this plaintiff; that plain-
tiff has no other means of irrigating his lands except from the
said canal. That plaintiff procured from said Idaho Irriga-
tion and Colonization Company a deed to the said water right
dated the eighth day of December, 1887, a copy of which is ex-
hibit 'A' of this complaint, and caused the same to be re-
corded in Ada county on the twelfth day of November, 1889,
and ever since recording the said deed plaintiff has fully kept
and performed on his part all the terms and conditions thereof
and therein required of him. . . . . Plaintiff is informed and
therefore alleges the fact to be that the defendant, through
different conveyances, succeeded to the right of the said Idaho
Irrigation and Colonization Company, but came into such
rights and the said canal long after the conveyance to plaintiff
of said water right and the recording thereof as aforesaid.
That the said defendant is now, and for some time past has
been, operating said canal, and has during the said spring de-
manded of the plaintiff that he contribute a large sum of money
toward paying the expenses of litigation heretofore had and
now pending concerning said canal and water rights, and for
extending and enlarging said canal, and plaintiff alleges that
under his said deed he is not liable for any such expenditure
or liable for any expense connected with said canal except such
as are mentioned in said deed, viz.: a proportionate amount
of the expense of maintaining and operating the same. And
the defendant has, through its board of directors and other
officers, threatened that if the plaintiff will not pay a portion
of the said expense of litigation, enlarging and extending, it will
deny him the use of any water from said canal and will so con-
tinue to deny him the use of water until all such expenditures
are paid, and acting upon its said threat to deny the plaintiff
water, the defendant has refused, and still refuses, to deliver
the plaintiff his share of the water now flowing in said ditch,

or any water therefrom whatever, notwithstanding, as the plaintiff is informed and believes, there is abundant water in said canal to supply the plaintiff with the full amount to which he is entitled, . . . . and is now carrying the said water to which the plaintiff is entitled past and beyond the plaintiff's tap on said canal, and threatens to so continue to carry said waters past and beyond plaintiff's tap and land and deny the plaintiff the use of any of said waters until he has paid a proportion of said expenses or litigation, enlarging and extending, for which he is no way liable. Plaintiff further alleges that he is ready and willing, and has at all times been ready and willing, to pay his just proportion of all the expense of maintaining and operating the said canal, and that he is financially able to pay the same at any time, which facts the defendant and its officers and agents well know, and have at all times known. Plaintiff further alleges that he is ready to receive the said water at convenient points on the said canal, and is now in great need of the same for the irrigation of alfalfa, which will dry up and the alfalfa plants will suffer and die and become a total waste unless said water is turned out for the use of plaintiff, and plaintiff has demanded of the defendant that its officers and agents turn out to the plaintiffs his said amount of water at the proper points on said ditch for the purpose of irrigating his said land. . . . . The plaintiff further alleges that he has not a plain, speedy or adequate remedy at law for the redress of the wrongs done and threatened, for the reason that the damages that will certainly result from said denial of water to the plaintiff will be of such a nature that they cannot be computed or even estimated."

This complaint is followed by a prayer following the allegations of the complaint. The provision upon which plaintiff relies in the deed referred to, and marked exhibit "A" to this complaint, is as follows:

"To have and to hold all and singular the said water rights, together with the appurtenances and privileges thereto incident, unto the said party of the second part, his heirs and assigns forever, subject, however, to the rules and regulations of said company governing the use of said water rights and to a

proportionate amount of the annual expense of maintaining and operating the irrigating ditch owned by the said the Idaho Irrigation and Colonization Company, from which said water is to be supplied." Defendant, answering, admits all the allegations of the complaint as to it being a corporation as alleged; that it is the owner and in possession of the ditch and water right alleged, and that plaintiff purchased a perpetual water right from the Idaho Irrigation and Colonization Company, and planted crops, orchards, etc., and that he has no other source of water supply excepting through the canal of defendant.

As to the allegation that plaintiff has planted to crops of various kinds three hundred and twenty acres of land, and used all the water he purchased for use, and has said land in a high state of cultivation, that said land will not produce remunerative crops without water for irrigation and the allegation that if the plaintiff were now deprived of water for the irrigation of his land, his fruit trees, crops, etc., would dry up and die and become a total loss, and defendant has not sufficient knowledge, information or belief to answer said allegations, and he therefore denies each and every of said allegations. Admits that plaintiff has a deed as alleged, from the Idaho Irrigation and Colonization Company, but denies that ever or at any time since the year 1894, or from any other time in the year 1902, or at any time since, plaintiff has fully performed on his part all or any of the terms and conditions thereof; as to the allegation that said plaintiff has, during all the time since the year 1894, or from any other time continued to use for the purpose of irrigating the growing crops on said lands, or for any other purpose, three hundred and twenty inches of water obtained from the said canal under and by virtue of his perpetual water right, peaceably, quietly, openly, continuously, uninterruptedly and adversely to the defendant and all others, except for the wrongful acts of defendants hereinafter complained of, this defendant has no information or belief to answer said allegations and therefore denies each and every of said allegations. Admits that it is operating the canal, but denies that during the spring or at other times, or at all, demanded of plaintiff that

he contribute a large sum of money, or any sum of money toward paying the expense of litigation heretofore had or now pending, concerning said canal and water rights, or for extending said canal, or for any other purpose except as hereinafter stated. Admits that plaintiff is only liable for a proportionate amount of the expense of maintaining and operating the same. Denies that defendant, through its board of directors and other officers, or in any way or at all, threatened that if plaintiff will not pay a portion of the said expense of litigation, enlarging and extending the ditch, it will deny him the use of any water from said canal, and denies that it will so continue to deny him the use of water until all such expenditures are paid, etc. Admits there is abundant water in said canal to supply plaintiff, and defendant alleges that it is able, ready and willing to furnish plaintiff the amount of water which plaintiff claims upon compliance on the part of plaintiff with the terms and agreements contained in the deed. Defendant alleges the fact to be that it has refused to deliver to the plaintiff the water he claims or any water until said plaintiff has paid his proportionate share of the operating and maintaining expenses of said ditch, during the year 1902, according to the terms and conditions of his said deed. Denies that plaintiff is ready and willing to pay his just proportion of all expenses of maintaining or operating the canal; for want of knowledge, information or belief, defendant denies the same. Denies that the defendant, its agent or officers, or any of them, well know, or any of them have known, that plaintiff is financially able to pay, etc. Denies that plaintiff has not a plain, speedy or adequate remedy at law, and denies that the damage that will certainly or otherwise result from denial of water to the plaintiff will be of such a nature that it cannot be computed or even estimated.

Defendant further answering says: "That since May 6th, 1902, it has been the owner and etc. of the ditch or canal mentioned in plaintiff's complaint. That the stockholders of defendant are the owners of land and users of water under said canal. Then follows an averment that between the sixth day of May, 1902, and the fifth day of January, 1903, defendant expended

in maintaining and operating said ditch or canal, and not otherwise, the sum of $4,467.75; that on or about January 10, 1903, defendant had prepared and mailed to plaintiff an itemized statement of said costs and expenses of maintaining and operating said canal, a copy of which statement is hereto attached marked exhibit 'A' to defendant's answer. That defendant is informed and believes that said statement was received by plaintiff. That with said statement there was sent to him a notice to the effect that his share of the expenses of maintaining and operating said canal for 1902 and to the fifth day of January, 1903, to wit, the sum of $212.80, was due and payable to the secretary of defendant company at Parma, Idaho. That plaintiff refused to pay said sum or any part thereof, and ever since has failed to tender or pay to defendant said sum or any sum whatever in payment of his proportionate share, etc. That it is one of the rules and regulations of defendant that no water will be turned out at the beginning of the irrigation season to users and consumers thereunder until the assessment for maintaining and operating said canal for the previous year has been paid to the company. That said rule applies to all users of water from said canal, and plaintiff knows of said rule and was fully advised thereof. Then follows an averment that such rule is necessary in order to properly maintain and operate said canal.

"That the items incurred shown in exhibit 'A' hereof were actually necessary to properly maintain and operate said canal. And the items appearing in said statement as attorney's fees were necessary expenses incurred by defendant in maintaining and preserving the water rights belonging to said canal including the right claimed by plaintiff."

After a trial in the lower court, without a jury, the court filed findings of fact and conclusions of law, finding "that the Idaho Irrigation and Colonization Company on the eighth day of December, 1887, and some time prior thereto, was the owner of a certain ditch and the water rights, and on said day for a valuable consideration, conveyed to plaintiff three hundred and twenty cubic inches of water as measured by the mining laws of the United States and the territory of Idaho. The deed was made to plaintiff, subject to the rules and regulations of said

company governing the use of said water rights and to a proportionate assessment of the annual expense of maintaining and operating such ditch. That thereafter and prior to the year 1902, said Idaho Irrigation and Colonization Company conveyed to defendant said ditch and water rights, and the defendant is the owner, etc. That on or about January 10, 1903, defendant prepared and sent to plaintiff a statement of the items of expense incurred by defendant in maintaining and operating its ditch for 1902. Plaintiff received said .statement, but refused to pay his proportionate share or any part of his share, and at the time of the commencement of this action, to wit, on the eleventh day of April, 1903, plaintiff had not paid his proportionate share of the expenses of maintaining and operating said ditch for the irrigating season of 1902, and had not tendered to defendant said proportionate sum or any part thereof. That about sixty days prior to the commencement of this action, defendant notified plaintiff that it was one of the rules and regulations of defendant company 'that no water will be turned out at the beginning of the irrigating season to users and consumers under said ditch until the assessment for maintaining and operating said canal for the previous season has been paid by consumers to the company.' The fifth finding is that all of the items of expenditure as appears by the statement of defendant are necessary charges and properly included in the expenses of maintaining and operating said ditch and canal for the irrigating season of 1902, except $141.07 which is itemized in the finding. The sixth finding is that the total cost of maintaining and operating the canal for the season of 1902, as claimed by the defendant, is $4,467.75; deducting from that amount the items above enumerated amounting to $141.07, would leave the total cost of operating and maintaining the ditch for the irrigating season of 1902, which, divided between the number of inches of water carried through said ditch, to wit, six thousand seven hundred and twenty inches, would make the charge against each inch of water supplied at sixty-four and twenty-five one-hundredths cents. The plaintiff taking three hundred and twenty inches would make his cost $205.60."

As conclusions of law the court finds that it is a reasonable rule and regulation of defendant company, that before turning the water out to plaintiff he shall be required to pay to the company his proportionate share of the operating and maintaining expenses of the ditch for the previous season.

Second. That before making application to the court for an injunction plaintiff should have tendered or paid to defendant his proportionate share of the cost of maintaining and operating said ditch for 1902, or such portion thereof as he himself admitted was a proper charge.

Third. Plaintiff is not entitled to an injunction and his application therefor is denied and the restraining order heretofore entered herein should be dissolved.

Fourth. That defendant is entitled to receive from the plaintiff in this action the sum of $205.60, as plaintiff's proportionate share of the maintaining and operating expenses of defendant's ditch for the irrigating season of 1902, and costs of suit, and judgment was entered in compliance with the foregoing findings and conclusions.

It is insisted by counsel for appellant that the findings and conclusions are not warranted by the facts as disclosed by the record.

The important and controlling question in this appeal, as we view it, is whether the court erred in its first conclusion of law, to wit: "It is a reasonable rule and regulation of defendant company that before turning the water out to plaintiff he shall be required to pay to the company his proportionate share of the operating and maintaining expenses of the ditch for the previous irrigating season." It is insisted by counsel for plaintiff that there is no evidence in the record showing that the defendant company ever made such a rule or regulation, and if such a rule or regulation had been regularly adopted by the board of directors of the corporation, it would be void for the reason that such a rule, when adopted by a company, must be general in its application and apply to all persons alike. A careful inspection of the record fails to disclose any evidence that such a rule was ever adopted by the company. It is stated in the

answer that such a rule and regulation existed and applied to all users of water from said canal, and that plaintiff knew of said rule and was fully advised of it. This is the only reference to such a rule, excepting in the findings and conclusions of the court. It must be apparent, under our system of irrigation in this state, that consumers of water under the large canal systems should not be allowed to hamper the companies, associations or corporations in the management of their work of furnishing water in many instances to hundreds of consumers from one canal.

The legislature in 1899 attempted to settle the question between the company, corporation, or person owning or controlling any canal or irrigation works and the consumers of water under such system, to wit: "Any person, company or corporation owning or controlling any canal or irrigation works for the distribution of water under a sale or rental thereof shall furnish water to any person or persons owning or controlling any land under such canal or irrigation works for the purpose of irrigating such land or for domestic purposes upon a proper demand being made and reasonable security being given for the payment thereof." (Sess. Laws 1899, p. 382.) By this statute it will be seen that companies, corporations or persons owning, controlling or operating canals are amply protected in the collection of their honest dues. Impecunious or dishonest persons cannot procure water for use upon their lands for a season and force the canal owner or operator to an action in court to collect for the use of such water. This is wise legislation; it protects parties who are willing to invest large sums of money in an enterprise that brings slow returns, but very beneficial and really indispensable to the community thus supplied with water. It is not an unreasonable requirement of the consumer and only furnishes the producer with reasonable protection for furnishing water.

In the case at bar it is made to appear that appellant had an absolute right to three hundred and twenty inches of water in defendant company's canal. This is conceded by the pleadings. The terms upon which it was to be delivered to him is also conceded. From a large number of letters passing from appel-

lant to the secretary of the company and *vice versa,* it is made to appear that the only question between appellant and the company was as to the amount of indebtedness due the company for maintenance and operating expenses for the year 1903, appellant insisting that the statement furnished showed an overcharge and the respondent insisting upon payment in full as shown by the statement. Upon the trial the lower court found that there was an overcharge of $7.20 against appellant, but counsel for him insists it is much more. Section 3203 of the Revised Statutes of 1887 provides: "Where a ditch is common property, or there is a common right to the use of the water of a ditch without payment therefor, and any labor or materials are necessary for the repair or cleaning of the ditch, or any gate or flume thereon or thereunto belonging, the water master of the district may make a fair *pro rata* assessment of labor or materials against the inhabitants of the district claiming the use of such water, according to the benefits received by each; and if any person so assessed neglects or refuses, for the period of three days after notice so to do from the water master or his deputy, to furnish his just proportion of the necessary labor or materials, according to such assesssment, must pay his *pro rata* in cash to be recovered, with costs, in an action by the water master in his own name."

The statute of 1899 does not repeal this section of the Revised Statutes of 1887. By construing the two sections it will be seen that the canal company in this case had its remedy in a suit at law to enforce payment of the amount due for expenses in maintaining and operating the canal for the year 1902, under the provisions of section 3203 of the Revised Statutes.

Our attention is not called to any provision of the statute of this state, neither are we able to find one, that authorizes a canal company to pursue the course taken by respondent in this case to enforce the payment of a disputed debt for water theretofore furnished appellant by respondent. It is shown by the record that appellant at all times refused to accept any terms or conditions from the respondent, except the obligations set forth in his deed. He refused to deed his property to the corporation defendant and accept stock in lieu thereof, and it is

unnecessary to say that the successor to appellant's grantor could impose no terms or conditions upon him, by any rules or regulations of the new company, that would in any manner interfere with the rights granted him in his deed. It does not seem necessary to discuss this question further. If the defendant corporation permitted the appellant to fall in arrears for the year 1902 in the payment of his proportion of the maintenance and operating expenses of the canal, the statute gave it a remedy, and instead of threatening to shut off the water for the next year or any other time in the future, it should have followed the remedy pointed out by the statute. It is ample and sufficient for the full protection of any company, corporation or person operating a ditch or canal in this state, and if rightly enforced does not work any injustice to the user, and yet guarantees the payment of all water dues from the consumer. We think the plaintiff was entitled to an order restraining the respondent from withholding the use of the water to which he was entitled under his deed.

Respondent insists in his brief that before appellant was entitled to equitable relief he should have tendered to respondent the amount he believed he was indebted to the respondent. It is shown that appellant repeatedly notified the defendant through its secretary that he was able, ready and willing to pay any and all sums he owed the respondent for the use of water, but when the bill was submitted to him he disputed its accuracy and insisted that he was being charged with items of expense for which he was not responsible under his deed. It would seem that if plaintiff was the owner of over four hundred acres of land, three hundred and twenty of which was under cultivation, a valuable water right for such land, and no showing that a judgment against him could not be enforced, that respondent could have complied with the contract of its predecessor and furnished appellant the water his deed called for and then settled the dispute as to the water furnished prior thereto in the manner prescribed by the statute.

Many authorities are cited by counsel for appellant, as well as respondent, but in our view of the case we need not look beyond the plain mandates of the statute for a determination of the issues presented by this appeal.

The trial court should have granted the relief prayed for in plaintiff's complaint by granting the injunction and left the parties to settle their dispute as to the past water troubles to another action. Judgment reversed and cause remanded for further proceedings in harmony with the views herein expressed, with costs to appellant.

Ailshie, J., and Sullivan, J., concur.