## MOWER v. BOND.

(District Court, D. Idaho, S. D. August 22, 1925.)

No. 1204.

1. **Waters and water courses ⚖⟹222—In federal reclamation project, water may be withheld from landowner In arrears for maintenance charge.**

Even if the federal government and its agents must conform to the state laws in the matter of initiating and perfecting appropriations from nonnavigable stream in Idaho, for an irrigation system constructed and maintained by such government under National Reclamation Act (Comp. St. §§ 4713a–4714f), manager of such government project may, as authorized by Act Aug. 13, 1914, § 6 (Comp. St. § 4713f), withhold water from land within the project, where owner is in arrears · for year for maintenance charge, though under the general state rule, held applicable to Carey Act companies and other quasi public corporations appropriating water for sale, water may ₁be refused only in respect to charges for current expenses, after demanding payment in advance; the state Supreme Court recognizing a measure of regulatory power in Congress touching distribution of water appropriated for federal government projects, and C. S. Idaho, §§ 4477, 4478, 4492, providing, that an irrigation district, authorized to be organized to participate in maintenance and operation of such projects, may act as agent for the United States for collection of charges, and "as such agent" may withhold water from a landowner who has not complied with federal statutes as to payments, or is in arrears for a year for maintenance charge; it not being intended to deny to the federal government, where there is no such intervening irrigation district, power to do directly what is expressly authorized to be done by its agent.

2. **Estoppel ⚖⟹107—Estoppel to withhold water from landowner in federal reclamation project held .insufficiently pleaded.**

Estoppel to withhold water from a landowner in a federal·reclamation project for being in arrears for more than a year in payment of maintenance charge held insufficiently pleaded, there being, besides a qualified and unsatisfactory allegation of plaintiff's inability to pay, only an allegation that defendant did . not promptly, at the beginning of year, shut off the water.

3. **Waters and water courses ⚖⟹222—Only Secretary of the Interior can give relief to delinquent settler on government project.**

Relief under the Phipps or Fact Finders Act of May 9, 1924 (Comp. St. Supp. 1925, §§ 4713fffffffff, 4713fffffffff), to a settler on a government project from a delinquent maintenance charge must come from the Secretary of the Interior, to whose discretion its administration is committed.

4. **Waters and water courses ⚖⟹222—Lien on delinquent's crops required as condition to right to continue use of water from government project.**

The lien on his crops, which, by temporary injunctive order, delinquent user of water from irrigation system maintained by government under National Reclamation Act (Comp. St. §§ 4713a–4714f) was, as a condition to right to continue to receive water, required to give the government, should be maintained unless, on dissolution of order, defendant project manager elects the remedy of shutting off the water.

In Equity. Suit for injunction by S. Clare Mower against J. B. Bond. Heard on motions for continuance and for dissolution of temporary injunction. Decision for defendant.

See, also, 6 F.(2d) 890.

J. B. Eldridge, of Boise, Idaho, for plaintiff.

James F. Ailshie, Jr., U. S. Atty., and B. E. Stoutemyer, both of Boise, Idaho, for defendant.

DIETRICH, District Judge. Plaintiff is the owner of a farm within what is known as the Boise Project, an irrigation system in Southwestern Idaho, constructed and maintained by the government under the National Reclamation Act (Comp. St. §§ 4713a–4714f). Defendant is the project manager.

After a period of operation the reclamation officials concluded that drainage facilities were necessary and accordingly, to meet the expenses of making provision therefor, a small charge per acre was levied upon all project land. The courts have definitively held the levy to be for "maintenance," and

valid. More than a calendar year having lapsed after the charge became due, the plaintiff, together with many others on the project, being in default, defendant, under the direction of his superior officers, gave notice that, unless payment was made during the current year, in installments as specified in the notice, further delivery of water would be withheld. The first installment was to be paid on or before July 1st, and plaintiff and others having failed to meet the requirement, defendant on or about July 3d shut down their gates and refused further delivery of water.

Thereupon, acting for himself and in behalf of others similarly situated, plaintiff brought this action in the state court, and upon an ex parte application procured a temporary injunction of a mandatory character requiring the delivery of water to be resumed. Defendant promptly caused the suit to be removed to this court, and thereupon, after notice, moved for a dissolution of the injunction, and at the same time plaintiff moved for an order continuing it in effect. The present submission is on these motions. Plaintiff does not contest the validity of the charge, or deny that in respect to it he has been in default for more than a calendar year. At the argument much was said as to his financial inability to pay, but upon examination of his bill it turned out that there was no averment upon the subject, and he was permitted to amend; the amendment filed is found to be very meager and inconclusive.

[1] Plaintiff's principal contention is that in operating the canal system the government and its agents are subject to the laws of the state, and that under such laws, as construed by the Supreme Court of the state, owners of irrigation works are without authority to refuse delivery of water to users because of their failure to discharge delinquencies. And in respect to Carey Act and other quasi public corporations, that is, companies appropriating public waters for sale, rental, or distribution, such seems to have become the settled rule of the state. Shelby v. Farmers', etc., Co., 10 Idaho, 723, 80 P. 222; Adams v. Twin Falls, etc., Co., 29 Idaho, 357, 161 P. 322; Parrott v. Twin Falls, etc., Co., 32 Idaho, 759, 188 P. 451; Reynolds v. North Side Canal Co., 36 Idaho, 622, 213 P. 344. Under these decisions, not only is such a company unauthorized to withhold water for failure to pay installments of the construction cost or purchase price, but also for a failure to pay a maintenance charge covering past operation, though such action may be taken in respect to charges for current expenses.

While it may be suggested that the reasons for such distinction in respect to maintenance charges are not very clearly defined, the rule has undoubtedly been established. If defendant, as manager of a government project, is subject to this rule, he is in a peculiar predicament, for under the provisions of section 6 of the Act of Congress of August 13, 1914 (38 Stat. 686 [Comp. St. § 4713f]), under which he has been acting, his authority to deny water is limited to cases where the user is "in arrears for more than one calendar year for the payment of any charge for operation and maintenance"; so that, if he is subject to both the federal statute and the general state rule, he cannot, in any case, avail himself of the remedy of denying water to a delinquent user.

Boise river, the source from which the project procures water, is an unnavigable stream, and in one aspect the controversy involves the underlying question of the relative rights of the government and the state in the unappropriated waters of such a stream. Plaintiff's position is that, considered in the light of the long-standing policy of the government to permit the appropriation of waters in the arid region for beneficial uses, the act admitting Idaho as a state (26 Stat. 215), and approving and ratifying its Constitution, particularly article 15 thereof, declaring the state's right to control all public waters within its boundaries, operated as an irrevocable grant to the state of all such waters, and that, if the government thereafter sought to divert water for beneficial purposes, it must of necessity put itself on the same footing with other appropriators, and comply with and become subject to the laws of the state in that respect. Short v. Praisewater, 35 Idaho, 691, 208 P. 844; Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 P. 268, 50 L. R. A. 747, 87 Am. St. Rep. 918.

Upon the other hand, dissenting from this view, defendant contends that, until appropriated under the state law, the waters of such a stream are the property of the government, to be used as it may see fit, without respect to state laws. No case has come to my attention fully supporting this view, but in some of the decisions from high sources are to be found intimations, at least, that the government retains a measure of interest or control of some character. See, for example, Burley v. United States (C. C. A. 9th) 179 F. 1, 102 C. C. A. 429, 33 L. R. A.

(N. S.) 807; Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340; Wyoming v. Colorado, 259 U. S. 419, 42 S. Ct. 552, 66 L. Ed. 999. A question of so great difficulty, necessarily involving far-reaching implications, should, perhaps, not be decided by an inferior court until the necessity arises; at least, not without the most careful consideration, which under present exigencies seems impracticable, and, there being other substantial grounds upon which the motions may be ruled, I put it aside.

As seems to be contemplated by the Reclamation Act, apparently the Reclamation Service has in practice conformed to the state laws in the matter of initiating and perfecting appropriations. United States v. Burley (C. C.) 172 F. 615. Assuming, then, but not deciding, that such a course is necessary, did the defendant act unlawfully in refusing water to plaintiff? Under the admitted. facts the refusal was authorized under the congressional Act of August 13, 1914, supra, if that act has any validity. Citing the Child Labor Decision, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, plaintiff asserts invalidity, because, so it is claimed, "Congress was without power to legislate on the subject of the distribution of water, it being purely a matter of local concern." But, manifestly, there is no real analogy between the two cases. The provision under consideration is not a general regulatory or police measure touching a matter of local concern. It is rather a direction of the government to its agents in respect to the management and disposition of property of which it is the owner. It was possessed of large tracts of arid lands, and to make them productive and marketable it engaged in this irrigation enterprise, in which it has invested millions of dollars of public moneys. That the enterprise was within the power of Congress is decided in the Burley Case, supra.

If, in harmony with plaintiff's contention, it be assumed that in acquiring water rights the government was subject to the state laws, surely it would have at least an equal footing with private owners in the matter of prescribing the conditions upon which it would dispose of its property—both the land and the water right made appurtenant thereto; that is, even under plaintiff's contention in respect to the state's control of water, the government, as any other proprietor, is competent to fix the terms and conditions under which it will sell or permit the use of its property. The power of Congress to legislate upon the subject is not open to doubt, and the only real question, under plaintiff's theory of the paramount authority of the state, is whether the conditions prescribed by Congress are in conflict with the expressed public policy of the state. As hereinbefore explained, the state Supreme Court has construed certain statutory provisions as forbidding the withholding of water from delinquent water users by Carey Act companies, and other quasi public corporations, where the appropriation had been made for sale, rental or distribution; but in none of the cases has a government project been involved.

In some material respects the appropriation made by the government differs from that of such a corporation. The government appropriates primarily for the reclamation of its own land, in the disposition of which, admittedly, it is in no wise subject to state regulation or control. Under the Idaho statutes it would doubtless be incompetent for an ordinary corporation, holding an appropriation for sale and rental purposes, to decline to sell or rent water for the irrigation of an area in excess of 160 acres to a single owner; no such restriction is authorized by the state laws. But in Nampa & Meridian Irrig. Dist. v. Petrie, 28 Idaho, 227, 153 P. 425, the Supreme Court of the state expressly upheld the right of the government to impose such limitation in respect to federal projects. "There can be no doubt," says the court, "that Congress has the power to restrict the right to the use of water furnished from government projects to 160 acres standing in the name of an individual." It is to be noted that the decision relates, not to the power of Congress to restrict the acquisition of public land, but the power to restrict the right to use water. It thus differentiates government projects and recognizes a measure of regulatory power in Congress touching the distribution of water appropriated for them. But even more significant is the attitude of the legislative branch of the state government.

Under the title "Co-operation with Federal Government," we find provision made in the statutes for the organization of irrigation districts to participate by contract or otherwise in the maintenance and operation of government projects. By sections 4477 and 4478, Comp. Stats. Idaho 1919, it is provided that such a district may act as agent of the United States for the collection of charges, and "as such agent" it is expressly authorized "to refuse the delivery of water to any person who has not made the pay-

ments and complied with the conditions required by said acts of Congress and the public notices and rules and regulations duly issued thereunder." And section 4492 authorizes a district that has contracted with the government to withhold delivery of water from a "landowner or entryman who shall be in arrears for more than one calendar year for the payment of any charge for operation and maintenance," etc., a provision strictly in accord with section 6 of the Act of August 13, 1914. True, there is here no intervening irrigation district; but surely the Legislature did not intend to deny to the government the power to do directly what is expressly authorized to be done by its agent.

It was suggested at the argument that these state provisions, as well as the congressional act, are void, but upon what ground is not clear. There are substantial reasons for separately classifying government projects. Those charged with their operation and maintenance are public officers, without the motives of selfish interest attending enterprises for private profit. But, aside from that consideration, these statutes, which as we have seen expressly adopt and ratify the federal provision for government projects, are in reality more liberal to the water user than is the state rule governing other projects. In each case, the owner is entitled to demand the payment of the charge; and in each, delivery of water may be refused upon failure of the user to pay. The difference is that in the one case, in order to avail itself of the right to deny water, the owner may and must demand payment in advance; whereas, in the case of the government, it must first give the user a calendar year after the obligation is due. To say the least, there is no more opportunity for oppression under the rule applicable to federal projects than under the other rule, and surely no user on a government project would desire the extension of the general state rule to such projects.

[2] Plaintiff also attempts to plead estoppel, but the facts averred are thought to be insufficient. It may be that, if defendant had induced the plaintiff to put in his crops during the current year with the promise that the demand in question would not be pressed until the close of the season, and if plaintiff were financially unable to meet the demand, the defendant, though an agent of the government, should be enjoined from now shutting off the water in violation of such understanding. But the pleading does not go that far; it alleges only that defendant did not promptly, at the beginning of the season, shut off the water. No inducements or misrepresentations are charged, and, as before indicated, the allegation of plaintiff's inability to pay is qualified, and far from being satisfactory.

[3] By an amendment to the bill, supported by affidavits, plaintiff complains of the conduct of the Reclamation Service touching the administration of what is referred to as the Phipps or "Fact Finders" Bill (approved May 9, 1924 [Comp. St. Supp. 1925, §§ 4713ffffffff, 4713ffffffffff]), passed for the relief of settlers on government projects. In substance it is represented that the Secretary of the Interior has been dilatory in giving effect to the act, and has arbitrarily denied merited relief to plaintiff and others, and that, apparently irritated by the proceedings recently brought in the Idaho courts against the project agents, he has resorted to retaliatory measures of a harsh and coercive character. But, whatever basis in fact, if any, there may be for such criticism, I am unable to see how it is relevant to the present issue. The administration of the act was, by Congress, committed to the discretion of the Secretary. That discretion is not subject to the control of the courts, nor are they authorized to grant the relief which the act contemplates. Granting that under its provisions the Secretary had the power to relieve the plaintiff from, or defer the payment of, the charge in question, he has not seen fit so to do, and it remains a valid obligation, subject to enforcement by all appropriate, lawful remedies.

[4] It follows that my general conclusion is with the defendant. His counsel will draw an appropriate order for signature, submitting the form thereof to opposing counsel, as is usual. By the temporary order, heretofore made, the delinquent user was, as a condition to the right to continue to receive water, required to give the government a lien upon his crops for the unpaid part of the charge. This lien I think should be maintained in force and protected, unless, upon the dissolution of the restraining order, defendant elects the remedy of shutting off the water instead.