INTERSTATE DRAINAGE & INVESTMENT CO. v. BOARD OF COM'RS OF FREEBORN COUNTY, MINN.

(Circuit Court of Appeals, Eighth Circuit.   November 23, 1907.)

No. 2,540.

1. STATUTES—CONSTRUCTION.

The essential object in judicial construction of statutes should be from a consideration of all its parts to discover the legislative mind in enacting it.   When the true intention is ascertained, it should prevail over literal terms.   So, when the expression is special or particular, but the reason general, the special should be deemed general.   Any construction that leads to absurd results should be avoided, where the trend of the act admits of a different, sensible application.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 259.]

2. DRAINS—MINNESOTA DRAINAGE STATUTE—CONSTRUCTION.

The Minnesota Drainage Law, Laws 1901, p. 413, c. 258, as amended by Laws 1902, p. 90, c. 38, which authorizes counties to contract for the making of drainage ditches on petition of persons interested, the cost to be paid by assessments on the lands benefited, construed liberally and as a whole as required to carry out the paramount legislative purpose to reclaim swamp lands for agricultural purposes and to protect the health and lives of persons living in the vicinity, by the provisions requiring the engineer in his report of survey and specifications on which contracts for the work are let to specify the date when the work shall be completed, which is also required to be stated in the contracts, does not preclude the letting of contracts after the expiration of such time, where for lack of proper bids they could not be let sooner, but in such case the county auditor, who is authorized to let the work in sections and to adjourn the letting "from time to time until the whole work shall be taken" and also to extend the time for completion as stated in the contracts and to relet contracts where the original owner fails to do the work within the time fixed, has power to let contracts even though the time originally fixed in the engineer's report has expired, and with the approval of the engineer to fix a later date for completion; and where contracts were so let, and the work completed thereunder in accordance with their terms and approved by the engineer, all without objection, the county cannot avoid payment to the contractor on the ground that the letting was illegal.

In Error to the Circuit Court of the United States for the District of Minnesota.

In the state of Minnesota there are large quantities of swamp lands which, left to natural law, would be quite useless to man and highly deleterious to the health of those living contiguous to the marshy region.   When drained these lands become valuable for agricultural purposes.   To the end of destroying the unwholesomeness of such marshes and reclaiming them from waste, the Legislature devised a scheme for the construction of draining ditches by the respective counties, to be paid for by assessments on the landowners within a prescribed contiguous area.   The proceedings were provided for by statute (chapter 258, p. 413, Laws Minn. 1901; amendments, chapter 38, p. 90, Laws 1902), the main provisions of which are collected in Rev. Laws Minn. 1905, c. 44.   The initiatory proceeding is by a petition of the given number of prescribed landowners, addressed to the board of county commissioners.   The county auditor is required to give notice of the filing of the petition, and the time and place for the hearing thereon.   The act provides for an engineer under bond, who shall, after the filing of said petition, make a complete survey of the line of the proposed ditch, stake out and define its limits and location, its extent, width, etc., marking it off each 100 feet by stakes or monuments; and his report shall specify the time and manner in which the work shall be done.   He shall also include in his report the form of contract "as complete in

its provisions as practicable," containing detailed and complete specifications, and provide for the necessary supervision for the laying of the tile, excavation, and other construction work of the contractor, defining the relation between the contractor or contractors, and give "the engineer the right, with the consent of the auditor or auditors, to modify his plans and specifications as circumstances may require," etc. At the completion of the engineer's survey he shall make report of his doings and submit therewith plans, specifications, and description of the lands, together with the expenses incurred, and the like. At the same session of the county board when said engineer is appointed, or within 10 days thereafter, said board shall appoint three resident freeholders of the county as viewers, who shall meet at the time and place designated by the auditor preparatory to commencing their duties as afterwards specified. Within five days of the filing of the engineer's report the auditor shall designate the time and place for the first meeting of the viewers within 15 days after the filing of said report, and he shall issue to said viewers a certified copy of the petition, notice of their appointment, and the time and place of the first meeting. The said viewers were to ascertain and report the names of the owners of the land and a description thereof, said names to be the same as appear on the tax duplicates of said county, estimate the number of acres in each of said tracts of land to be benefited or damaged, etc. The land, etc., so benefited shall be assessed in proportion to the benefits for the construction thereof. The viewers shall forthwith file with the auditor a report of their doings and findings in detail within 30 days from the date of their first meeting; provided, that high water, inclement weather, or unavoidable accident may excuse the viewers. Within three days after the filing of such report of the viewers, the auditor shall call a special meeting of the board, and give three weeks' published notice of the time and place of such special meeting. The statute provides how the damages shall be paid. After the county board shall make the order establishing said ditch, the auditor shall proceed to offer for sale the jobs of digging and constructing the entire work, either as one job or in one or more linear sections of 100 feet each, said sections to be known and numbered by the stake or monument set by the engineer at the foot thereof. The auditor shall contract in the name of the county with the party to whom any of such jobs of construction work or any section is sold, requiring him to construct the same in the time and manner specified in the provisions and form of said contract, and shall take from him a bond, etc. The auditor is to give three weeks' public notice of the letting of such contracts, and the time when and place where such contracts shall be let to the lowest responsible bidders, etc., inviting bids for the work as one job and also for any one or more of such sections, reserving the right to reject any and all bids. Such auditor may adjourn such letting from time to time until the whole work shall be taken, and with the approval of the engineer may let any one or more of such sections or construction jobs. If no bids are received which can be entertained, the bondsmen for the petitioners may have the right, at any time, to pay the costs of the proceedings and dismiss the same. The said contracts shall be drawn to the satisfaction of the engineer, and shall embrace all of the provisions provided for the giving of bond by contractors for public works and improvement; and shall provide that the time therein specified shall be of the essence of the contract, "in that if there be any failure to perform the work according to the terms of said contract, within the time limited therein, originally or by extension, the contractors shall forfeit to the county," etc. The statute provides for the granting of an extension of time by the auditor when applied for in writing.

Conformably to the provisions of this statute, the board of county commissioners of Freeborn county, on the 15th day of April, 1904, ordered to be constructed the ditch in question. The time mentioned in the report of the engineer to the board for the completion of the work was October 1, 1904. Accordingly the county auditor duly gave notice of the time and place for the public sale of the jobs for constructing said ditch, in linear sections of 100 feet each. No acceptable bidders appearing at the time designated for the first meeting, the auditor, by open proclamation, continued the bidding until a later date in June; and for the same reason, by proclamation at this second

designated time, the letting was continued to another fixed period from time to time until the 13th day of October, 1904, when the plaintiff's bids were accepted for the several linear sections of this work, for the completion of which it entered into separate contracts and gave bonds for their faithful performance, which were accepted and approved by the auditor and engineer. Each of the contracts contained the following clause: "It is further specifically agreed between the parties hereto that the time limit within which said job of ditching and constructing shall be completed is hereby extended to and fixed at December 31, 1904, for the reason that by the delay in letting this contract it is impossible to complete said work within the time limited by the engineer's report." The time was continued in the other contracts so as to enable the contractor to complete the work after the winter season was broken. The engineer made the following certificates which were incorporated in each of the said contracts, with different dates for their completion: "I hereby certify that I am the identical E. W. Van Meter who is the engineer referred to in the within contract and who was the engineer duly appointed as by law required in the matter of Ditch No. 8, referred to therein. I have carefully and thoroughly examined the foregoing contract and all matters pertaining to the letting thereof and the bid of the said Interstate Drainage & Investment Co. (a corporation) filed therein, and I hereby express my consent to, my approval of, and satisfaction with, the form of said bid and the acceptance thereof, and the foregoing contract, and the form of the bond hereto attached, and I specifically consent and approve of the extension of time limited for the doing of said job of ditching and constructing to the 31st day of December, 1904." These contracts were duly filed, and the county commissioners were fully cognizant thereof.

The plaintiff proceeded with the construction of the ditch, and completed the work called for by the first contract series in the season of 1904. Thereupon the engineer duly certified the fact to the county commissioners that the contract had been fully performed in exact accordance with the provisions thereof, and on the 11th day of January, 1905, the defendant paid the plaintiff the full price of this contract. When the ditch season of 1905 opened, the plaintiff continued the work and completed the next two contracts of the series within the time limited in the contracts; the engineer inspected and accepted all the work covered by these contracts, and no question is made that the work was not done according to the contracts and accepted by the engineer. The assessment for the work was duly made upon the landowners of the designated ditch district. About the time of the completion of the work under the second contract three of the property owners, out of a very large number of the affected ditch district, instituted suit in the district court of Freeborn county against the county and certain of its officers and this plaintiff, seeking to have the order establishing the ditch vacated and the contractor restrained from continuing the work. No steps, however, were taken by the petitioners therein to obtain a temporary restraining order, and they gave no bond therefor. That suit has never been tried. It assailed the transaction on the ground "that no ditch or drain was ever laid in said proceedings, and that the defendant, the Interstate Drainage & Investment Company, had not right or authority under the statutes of the state of Minnesota to enter into said contracts or engage in the construction of any ditch or drain in said state." The grounds thus predicated did not present the essential issue for the first time set up in the answer to the plaintiff's action herein, to be hereinafter noted. After the plaintiff had completed the work on its two succeeding contracts of 100 linear feet divisions, and after the engineer had accepted the work and duly certified that the same had been performed in full compliance with the contract, the county commissioners refused to pay therefor because of said injunction suit. Thereupon the plaintiff brought this action to recover on said completed contracts, which the defendant not only resists on the ground that the work was not completed within the time stated in the first report of the engineer to the board of county commissioners, but by counterclaim seeks to recover back the amount paid to the plaintiff on the first contract. At the conclusion of the plaintiff's evidence the court directed a verdict for the defendant on the plaintiff's action, and for the plaintiff on the counterclaim.

John A. Senneff and Henry A. Morgan (Morgan & Meighen, on the brief), for plaintiff in error.

Norman E. Peterson and John G. Skinner, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge (after stating the facts as above).  For the first time in the history of the transactions in question, in the final answer of the defendant county was the contention put forth that the contracts in question are void by reason of the fact that they were not made and the work completed prior to October 31, 1904, the time stated in the first report made by the engineer to the board of county commissioners.  And the ruling of the Circuit Court affirmed this contention.  If this proposition be correct, its judgment must be affirmed.  If, however, it be untenable, the judgment should be reversed.

The essential object of judicial construction of a statute is to discover the legislative mind in enacting it.  The first step in the analysis is to perceive from the face of the whole act what was the underlying purpose.  "The intention of a legislative act may often be gathered from a view of the whole and every part of a statute taken and compared together.  When the true intention is accurately ascertained, it will always prevail over the literal sense of the terms.  The occasion and necessity of the law, the mischief felt, and the object and remedy in view are to be considered.  When the expression in a statute is special or particular, but the reason general, the special shall be deemed general, and the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice, contradiction, and absurdity.  * * *  A thing within the intention of the Legislature in framing a statute is sometimes as much within the statute as if it were within the letter."  In the Matter of Bomino's Estate, 83 Mo., loc. cit. 441.  Included in the statutory scheme of the state of Minnesota for constructing such ditches were (1) the paramount object of rescuing from waste large bodies of land and subjecting them to profitable husbandry and production;  and (2) the protection of the health and lives of the people exposed to the deleterious effects of such overflowed lands.  To emphasize this fact the thirty-first section of the act enjoined that "this act shall be liberally construed so as to promote the public health and the drainage and the reclamation of wet or over-flowed lands."  From the necessities of the situation, the character of the work to be done and the letting of the "job sales," the whole matter was largely committed to an engineer selected by the county commissioners and to the county auditor.  That which principally concerned the public immediately interested in the ditch was that it should be built through the designated section in the direction desired, of the particular dimensions, the cost thereof, and a completion of the work at as early a period as practicable.  While the engineer in the first instance was to state in his preliminary report the time within which the work was to be done, that is a subordinate matter of minor consideration.  It was important only and required for the purpose of advising persons who came to bid at the job sales to enable

them to decide in their own minds whether or not they could probably complete the work within the time fixed by the engineer.

On the face of the statute it is apparent that the Legislature realized that it was not expected that the engineer could in advance fix a hard and fast time for the completion of such work, and therefore the statute provided that "he shall specify the time so far as practicable, and the manner in which the work shall be done, and for that purpose may set a different time for completing the several contracts." The statute furthermore anticipated that at the time fixed by the auditor for receiving bids no acceptable bidder might appear; or that only a given 100-foot subdivision might be let at such meeting. To meet this possible contingency, the statute empowered the auditor to "adjourn such letting from time to time until the whole work shall be taken, and with the approval of the engineer, may let any one or more of such sections," etc. "The engineer shall attend to the letting of the work and no bid shall be accepted without his approval." It will be observed that in authorizing the auditor to make such adjournments he is not limited to any given number of adjournments, and in authorizing him to adjourn from time to time there is no prescription that the time first stated in the preliminary report of the engineer should be the outside limit of such adjournments. The object of the time first fixed for the auditor for receiving bids had subserved its purpose when the auditor and engineer met to receive the bids. Presumptively all persons desiring to bid on the jobs would attend at said first meeting, when then and there they would have notice, by proclamation of the auditor, when the next meeting would be held. If they did not attend it was their fault, and no one can complain thereof. If there were persons, as suggested by counsel for defendant, who might at any time desire to make bids after the first meeting, they could have ascertained by going to the auditor's office, to whom the statute committed such adjournments, whether any jobs had been sold, what remained to be sold, and when they would be exposed to sale. So that no reasonable, conceivable injury could come to parties interested in the construction of the ditch by the extension of the time.

No construction should be given to a statute that would inevitably lead to absurd results, when that can be sensibly avoided. If, as contended for, the contracts for work made at any such adjourned meetings for completion beyond the time specified in the engineer's first report to the board of county commissioners are absolutely void, what would be the result? The statute provides that any party interested, dissatisfied with the action of the board of county commissioners in ordering the ditch, may resort to the courts and make contest in respect of his property, or damages thereto; which proceeding might last beyond the time fixed in the engineer's report. Again, the statute authorized the letting of separate contracts to different bidders for each 100-foot section. At one meeting fixed by the auditor a single job of 100 feet might be sold, and another adjourned meeting ordered for the sale of the remaining jobs, and so on until the whole should be sold. The first purchaser of a job, in obedience to the mandate of the statute, would at once enter into contract under bond requiring the

completion of the work to be done by him within the time specified. If the remaining jobs were not sold in time to allow the work under them to be completed within the period stated in the engineer's first report, what would be the situation? Most certainly the contractor who had, conformably to his undertaking, completed his job and received the requisite certificate from the engineer, would be entitled to his pay. As the remainder of the ditch could not be finished within the time fixed in the first report of the engineer, according to the defendant's contention the ditch project must then and there end after 100 feet may have been dug and paid for. The statute makes no provision for a second report by the engineer to the county commissioners, setting another time for the completion of the work of construction. In such condition, under the defendant's contention, we perceive no other course open to the community desiring the ditch than to begin de novo a proceeding to secure it. The scheme of the statute, in our judgment, admits of no such obstructive absurdities.

As persuasive proof that the lawmakers anticipated that from the very necessities of the situation contingencies would arise prolonging the time first suggested, the act authorized the auditor to adjourn the biddings from time to time to meet the contingency of no bidders at a given meeting; when sold, the auditor was to exact the contract for doing the work "in the time and manner specified in the provisions and form of said contract," with the additional provision that the engineer should attend to the letting of the work, and no bids should be accepted without his approval. The Legislature further anticipated that unforeseen contingencies might arise after the contractor began his work, rendering it impossible to complete it within the prescribed time; and therefore the statute authorizes the auditor to extend the time for completion, and this regardless of the time named in the engineer's report.

Finally, as demonstrative of the general intendment of the legislative scheme, that, after the work should be authorized by the county commissioners, the time first stated by the engineer was rather directory than mandatory, being for the mere guidance of bidders at the first meeting, the statute provided that:

"If a job be not completed within the time fixed in the contract, the bondsmen shall notify the auditor in writing of that fact, within five days after the expiration of the time fixed in the contract; whereupon the auditor shall, in writing duly dated, order said bondsmen to complete said job within a time specified by him, and said bondsmen shall receive from the proper county the amount due on such job or part thereof that they have so completed, less the proper deduction for forfeiture, to be determined by said engineer: provided, that a job not completed as hereinbefore specified by the original contractor, and the completion of which is not undertaken by the bondsmen as hereinbefore provided, within ten days after the date of such order, or of which failure to complete the bondsmen shall not so notify said auditor, shall be resold by the auditor after ten days' published notice, to the lowest responsible bidder."

From which it is manifest: (1) That the time for doing the work by the contractor is stated in his contract; (2) that having the ditch constructed was the paramount object; and (3) it was left to the auditor to fix the time in which the uncompleted work should be done

after the failure of the first contractor. In no contingency was the matter to go back on any second report to the county commissioners and await their approval and order.

The Supreme Court of Minnesota has recognized, from the very necessities of the situation in the practical application of such statutes, the sensible rule that, as from oversight or minute particularity in detail they are imperfect, and therefore implications and inferences may be drawn from the evident intent of the Legislature, gathered from the law taken as a whole, "from the necessity of making them operative and effectual as to specific things which are included in the broad and comprehensive terms and purposes of the law; as these inferences and implications are as much a part of the law as that which is distinctly expressed therein." State v. Board of County Commissioners, 87 Minn. 335, 92 N. W. 218 (60 L. R. A. 161).

In McMillan v. Board of County Commissioners of Freeborn County (the same defendant as here), 93 Minn. 16, 100 N. W. 384, the petition for the work was filed in September, 1901, for the construction of the ditch. The auditor and county commissioners duly complied with the provisions of the statute, but the viewers were not appointed until December, 1902, their appointment being delayed for several months by the board of commissioners after the report of the engineer was made. It was urged that by failing to comply with the provisions of the statute in respect of the time in appointing the viewers the board had lost jurisdiction of the case. Of this contention the court said:

"Under the rule repeatedly adopted and applied by this court in causes involving a variety of subjects, we are of the opinion the provisions of the act of 1901, as amended, directing the county commissioners to act within a certain specified time, must be deemed directory merely, and that the neglect of said board to appoint such viewers within the time fixed by the act does not invalidate said proceedings. (Citing authorities.) The reasons for holding this class of enactments directory are summoned up in Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, 18 N. W. 96, as follows: 'Where the provisions of a statute as to the time when an act shall be done are intended merely for the guidance of public officers, so as to insure the orderly and prompt performance of public business, a disregard of which cannot injuriously affect the rights of parties interested, it will be deemed merely directory; but where it is intended for the protection of the citizen, and to prevent a sacrifice of his property, and is such that, by a disregard of it, his rights might be injuriously affected, it will be deemed mandatory.'"

No one, including the property owners immediately interested in the construction of this ditch, whose health and lives it was intended to protect, made any complaint of the extension of the time by the auditor in the contract, but they stood by and saw the work done beyond the time stated in the engineer's report, knowing that it had been extended; and not until after the work in suit was completed, honestly and faithfully, accepted and approved by the engineer, and the cost thereof assessed against the designated property owners, after the county had paid for a part of it, and after this litigation began, was any question ever raised respecting the matter of time fixed in the engineer's report. In our judgment, common justice and common sense conspire to say that the statute does not admit of such defense under such circumstances.

Since the trial of this cause in the Circuit Court, the Legislature of Minnesota, on April 23, 1907 (Gen. Laws Minn. 1907, p. 509, c. 367), undertook to pass a curative act, which in its terms would effectually validate the contracts in question. In view, however, of the doubt in our minds as to whether the scope of the text is sufficiently indicated by the title of the amendatory act, we refrain from making any ruling thereon, but rest our conclusion on the reasonable practical construction of the statute under which the contracts in question were made and performed.

The Circuit Court erred in directing a verdict for the defendant. The judgment must be reversed, and the cause remanded with directions to grant a new trial, and for further proceedings in conformity with this opinion.