## UNITED STATES v. HANSON.

**(Circuit Court of Appeals. Ninth Circuit. February 1, 1909.)**

### No. 1,632.

**1. WATERS AND WATER COURSES (§ 222\*) — CONSTITUTIONAL LAW (§ 62\*) — RECLAMATION ACT—DELEGATION OF LEGISLATIVE POWER.**

The reclamation act of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1907, p. 511), providing for the irrigation by the United States of arid public lands, is within the power of Congress as to lands within the states as well as territories. under Const. art. 4, § 3, giving it power "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States," and is not in violation of the Constitution on the ground that it authorizes the expenditure of public money without an appropriation, since it is in itself an appropriation of the proceeds of land sold, nor as delegating legislative authority to the Secretary of the Interior.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 222;\* Constitutional Law, Cent. Dig. § 96; Dec. Dig. § 62.\*]

**2. PUBLIC LANDS (§ 47\*)—RECLAMATION ACT—WITHDRAWAL OF LANDS FOR PURPOSES OF ACT.**

The reclamation act of June 17, 1902, c. 1093, § 3, 32 Stat. 388 (U. S. Comp. St. Supp. 1907, p. 513), directs the Secretary of the Interior to "withdraw from public entry the lands required for any irrigation works contemplated under the provisions of this act," and authorizes him "to withdraw from entry, except under the homestead laws, any public lands believed to be susceptible of irrigation from said works." *Held*, that two classes of withdrawals were thereby provided for, and that the exception of homestead entry from the second had no application to the first; withdrawals and reservations thereunder being, from the necessity of the case, absolute.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 133; Dec. Dig. § 47.\*

Rights acquired by homestead settlements and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

**3. PUBLIC LANDS (§ 131\*)—OCCUPANCY OF UNSURVEYED LANDS—RIGHTS OF OCCUPANT.**

The mere occupation of unsurveyed public land, although with the bona fide intention of acquiring title thereto under the homestead law when it shall be surveyed, gives the settler no rights as against the United States, and Congress may at any time before the initiation of homestead rights reserve the land for any public purpose.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 347; Dec. Dig. § 131.\*]

**4. PUBLIC LANDS (§ 132\*)—WITHDRAWAL UNDER RECLAMATION ACT—RIGHTS OF SETTLER.**

The reclamation act of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1907, p. 511), contains no provision for the recognition or protection of any right of a settler on unsurveyed public lands which may be withdrawn and reserved thereunder for use in the construction of irrigation works, nor is there any such provision in Act June 27, 1906, c. 3559. 34 Stat. 519 (U. S. Comp. St. Supp. 1907, p. 519), or other statute of the United States, and such a settler has no right which he can oppose to the taking of the land for such purpose.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 348; Dec. Dig. § 132.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

167 F.—56

In Error to the District Court of the United States for the Southern Division of the Eastern District of Washington.

On December 31, 1906, the United States commenced an action of ejectment against the defendant in error to recover the possession of a one-half section of government land in Klickitas county, state of Washington, alleging in the complaint that in October, 1905, the defendant in error, without right or title, had entered into the possession of said premises, which prior to that time had been withdrawn from entry, location, or settlement of any kind or character. The defendant in error answered, alleging that on April 29, 1891, the land in controversy was unsurveyed public land of the United States, and that on that date he took possession of the same with intent to file a homestead thereon under the laws of the United States, and that he has continued to reside thereon, and made his home thereon from that date until the present time, at all times intending to prove up on said land as soon as the same was surveyed and open to entry; that the land has not yet been surveyed; that the defendant in error has cleared about 10 acres thereof, and has from ½ to 2 acres under fence. The answer also alleged that the action is unauthorized by any law of the United States; that its purpose is to obtain possession of the land in controversy with a view of using it for the reclamation service of the United States under the act of Congress of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1907, p. 511); and that by virtue of that statute the Secretary of the Interior was authorized to acquire by purchase, or by condemnation under judicial process, any rights or property necessary for the carrying out of said act. To this answer the plaintiff in error demurred. The demurrer was overruled, the court holding that, notwithstanding that the land was unsurveyed and not open to homestead entry, and notwithstanding that it was withdrawn for forest reservation purposes on September 8, 1902, and for reclamation purposes on September 13, 1904, the settlement of the defendant in error thereon for homestead purposes gave him a prior right thereto, and that the government could only obtain the land for reclamation purposes by condemnation. The plaintiff in error replied, denying the qualifications of the defendant in error to enter said land as a homestead, and denying the bona fides of his alleged settlement. A trial was had before a jury, and at the conclusion thereof the court, upon the motion of the defendant in error, instructed the jury to return a verdict in his favor. Section 3 of the act of June 17, 1902, 32 Stat. 388 provides as follows:

"That the Secretary of the Interior shall, before giving the public notice provided for in section four of this act, withdraw from public entry the lands required for any irrigation works contemplated under the provisions of this act, and shall restore to public entry any of the lands so withdrawn when, in his judgment, such lands are not required for the purposes of this act; and. the Secretary of the Interior is hereby authorized, at or immediately prior to the time of beginning the surveys for any contemplated irrigation works, to withdraw from entry, except under the homestead laws, any public lands believed to be susceptible of irrigation from said works: Provided, that all lands entered and entries made under the homestead laws within areas so withdrawn during such withdrawal shall be subject to all the provisions, limitations, charges, terms, and conditions of this act; that said surveys shall be prosecuted diligently to completion, and upon the completion thereof, and of the necessary maps, plans and estimates of cost, the Secretary of the Interior shall determine whether or not said project is practicable and advisable, and if determined to be impracticable or unadvisable he shall thereupon restore said lands to entry; that public lands which it is proposed to irrigate by means of any contemplated works shall be subject to entry only under the provisions of the homestead laws in tracts of not less than forty nor more than one hundred and sixty acres, and shall be subject to the limitations, charges, terms, and conditions herein provided: Provided, that the commutation provisions of the homestead laws shall not apply to entries made under this act."

A. G. Avery, U. S. Atty. and J. B. Lindsley, Asst. U. S. Atty. for plaintiff in error.

Henry J. Snively, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The defendant in error raises in this court for the first time the question of the constitutionality of the reclamation act on the grounds: First. That the work to be done and the expenditures to be made under it are not public and governmental in character, and are not within the limited powers belonging to the federal government. Second. Conceding that the government has the power to pass such an act affecting public lands in a territory, it has not such power as to lands within the states or in any localities where there are no government lands; therefore an act which essays to do both is void because it is impossible to segregate the valid from the invalid portion thereof. Third. That it authorizes the expenditure of the public moneys without an appropriation by Congress. Fourth. That it delegates legislative authority to the Secretary of the Interior, and authorizes him to determine what and where irrigation systems shall be built and maintained, and what shall be expended thereon.

The Constitution gives to Congress the "power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." In United States v. Gratiot, 14 Pet. 526, 10 L. Ed. 573, it was said that Congress has the same power over the public lands as over any other property belonging to the United States, "and this power has been vested in Congress without limitation." In Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534, Mr. Justice Field, referring to the constitutional provision above quoted, said:

"That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the mode of transferring this property or any part of it, and to designate the persons to whom the transfer shall be made."

In pursuance of that power, Congress passed the reclamation act to make marketable and habitable large areas of desert land within the public domain, which lands are valueless and uninhabitable unless reclaimed by irrigation, and the irrigation whereof is impracticable except upon expenditure of large sums of money in the construction of a system of reservoirs and distributing canals. All previous efforts of the government to make these arid lands available for settlement had resulted in failure. By the desert land act of March 3, 1875, c. 160, 18 Stat. (vol. 3) 497, Congress had made provision for their use by individual settlers, and on March 3, 1877 (Act March 3, 1877, c. 107, 19 Stat. 377 [U. S. Comp. St. 1901, p. 1548]), had enacted further legislation to facilitate the reclamation of such lands by private entrymen, and in 1894 (Act Aug. 18, 1894, c. 301, § 4, 28 Stat. 422, [U. S. Comp. St. 1901, p. 1554]), to provide for the irrigation of the arid public lands, had passed the Carey act, by which it proposed to donate to the states in which such lands were located so much thereof not exceeding 1,000,000 acres in each state, as the state would cause to be reclaimed. These efforts having failed to accomplish the desired end, the reclamation act was passed. Congress, being the owner of the lands and vested with unlimited authority over the same, as it has

been held by numerous decisions of the Supreme Court, had unquestionably the right to expend money thereon for their improvement. It has always exercised the right to expend money in causing surveys of the public lands to be made, and in providing for the protection of the public lands. Nor do we discover any ground for holding that its power over the public lands within a state stands upon any different basis from that of its power over public lands in a territory. Although the government on admitting a state into the Union relinquishes its control of the disposition of the waters of the state, except in so far as the regulation of commerce is concerned, it relinquishes none of its rights over the public lands included within the territorial limits of the state. The government is still sovereign over such lands, and, in the nature of things, so long as it does not interfere with state legislation over waters of the state, it must have the same power to improve, protect, and offer for settlement or sale the public lands within a territory. The power of Congress to govern the territories has nothing to do with this power over the public lands. In Camfield v. United States, 167 U. S. 519, 17 Sup. Ct. 867, 42 L. Ed. 260, the court said:

"While we do not undertake to say that Congress has the unlimited power to legislate against nuisances within a state which it would have within a territory, we do not think the admission of a territory as a state deprives it of the power of legislating for the protection of the public lands, though it may thereby involve the exercise of what is ordinarily known as the police power, so long as such power is directed solely to its own protection."

The defendant in error quotes the language of the opinion in Kansas v. Colorado, 206 U. S. 91, 27 Sup. Ct. 665, 51 L. Ed. 956, in which it was said:

"We have within our borders extensive tracts of arid land, which ought to be reclaimed, and it may well be that no power is adequate for their reclamation other than that of the national government; but if no such power has been granted, none can be exercised."

But it is clear from other expressions in the opinion that the language so quoted had reference solely to the question of the power of Congress to interfere with the state control over the flow of waters within its limits, which control, subject to the power of Congress to regulate commerce, is vested wholly in the state. Elsewhere in the opinion it was said:

"As to those lands within the limits of the states, at least of the Western states, the national government is the most considerable owner, and has power to dispose of and make all needful rules and regulations respecting its property. We do not mean that its legislation can override state laws in respect to the general subject of reclamation."

The disappearing point of the power of Congress to reclaim arid public lands within a state is thus placed at the line where such legislation interferes with state legislation over the subject of reclamation. No such interference is suggested in the present case.

Nor does the act violate the Constitution in that it authorizes the expenditure of public moneys without an appropriation. The act itself is the appropriation. It provides that the proceeds of the sale of public lands "are hereby reserved, set aside and appropriated as a special fund in the treasury to be known as the 'Reclamation Fund.'" It

is said that the appropriation is indefinite. This is true, but it is not more indefinite than other appropriations which have been made by Congress from the beginning of the government, the constitutionality of which has never been questioned.

But it is urged that the act delegates legislative authority to the Secretary, in that it authorizes him to determine what irrigation system shall be built and maintained, and what amount shall be expended thereon. A similar contention was advanced in Union Bridge Company v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523, concerning the river and harbor act of 1899 (Act March 3, 1899, c. 425, 30 Stat. 1151 [U. S. Comp. St. 1901, p. 3510]), which gave to the Secretary of War power to determine whether bridges on navigable waters of the United States are unreasonable obstructions to navigation, and providing for the removal of such bridges when so condemned by the Secretary. But the court held that the act was not unconstitutional as a delegation of legislative power to an executive officer. Said the court:

"In performing that duty, the Secretary of War would only execute the clearly expressed will of Congress, and will not, in any true sense, exert legislative or judicial power."

Of course it was impossible to determine in advance the extent of the fund that would be available for reclamation purposes. It was the will of Congress expressed in the act that, with certain reservations, the whole of the fund to be derived from the sale of public lands in each of the designated states and territories should, for a specified period, be devoted to the reclamation of the arid lands of that state or territory. Section 9 of the act apportions the amounts so to be expended in each district. It is only the use of the revenues derived from taxation that is by the Constitution expressly restricted to the payment of the debts, and provision for the common defense and general welfare of the United States. And, if by implication the funds derived from the sale of public lands of the United States are subject to the same restriction, there is no difficulty in the way of holding that the use of the funds contemplated by the reclamation act is for the common welfare. It is as clearly as much so as are the grants of lands in aid of the construction of transcontinental railroads which have been judicially sustained. We find no ground for holding that the act is unconstitutional.

Prior to the date of the reclamation act, the defendant in error had settled upon the land in controversy, intending to make a homestead entry thereon whenever it should be surveyed or offered for settlement. It has never been surveyed or offered for settlement, and the question arises whether or not he has acquired such right thereto that it may not be withdrawn under section 3 of the act. That section makes provision for two distinct classes of reservations of public lands for two distinct purposes. It provides, first, that the Secretary may withdraw from public entry such lands as are required for the actual occupation of the reclamation service. This is for such purposes as reservoirs, canals, pumping works, etc. No exception whatever is expressed as to lands which are authorized to be withdrawn

for these purposes. It provides, second, for the withdrawal of any other public lands "believed to be susceptible of irrigation from said works." Such lands are to be withdrawn from entry "except under the homestead laws." We are unable to assent to the proposition that these two provisions for withdrawal are in pari materia, and that the exception expressed in the second as to entry under the homestead laws is to be read into the first. On the contrary, we find from the fact that the exception is inserted in the second case and omitted from the first convincing proof of the intention of Congress that there was to be no exception of lands to be withdrawn under the first clause. There was the best of reasons for expressing such an exception as to lands to be withdrawn under the second clause, for it was the whole scheme of the act to reclaim arid lands for the purpose of inducing homestead settlement thereon. There was the best of reasons for omitting it from the first clause, for it was the intention to reserve thereunder only such lands as were needed for the actual occupation of the reclamation service, such as for reservoirs, dams, canals, and pumping works. In the very nature of the case there could be no exception for homestead entry on such reserved lands unless they were subsequently found to be unnecessary for the purpose for which they were reserved. In that event the act provides that the Secretary restore them "to public entry."

There is nothing in the essential nature of the acts of entering upon unsurveyed public land, residing thereon and improving the same with the intention to enter the same as a homestead, to confer upon the settler any vested right, or any kind of claim to the land, and such acts create no impediment to the power of the government to devote the land to any public purpose. Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668; Kansas Pacific Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920; Campbell v. Wade, 132 U. S. 38, 10 Sup. Ct. 9, 33 L. Ed. 240; Tarpey v. Madsen, 178 U. S. 220, 20 Sup. Ct. 849, 44 L. Ed. 1042; Northern Pacific Railroad v. Colburn, 164 U. S. 383, 17 Sup. Ct. 98, 41 L. Ed. 479; Russian American Packing Co. v. United States, 199 U. S. 570, 26 Sup. Ct. 157, 50 L. Ed. 314. In Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, it was held that a settler on the public domain in advance of the public surveys acquires no right except the preferential right to secure the land after it is surveyed and offered for settlement. The court said:

"The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him: 'If you wish to settle upon a portion of the public lands and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them.'"

It is the clearly expressed doctrine of this and other decisions that mere occupation of public land gives no right as against the United States, and that Congress has the power to set aside such land prior to the acquisition of homestead rights thereon and reserve the same for any public purpose. Prior to such reservation, the most that a

settler on unsurveyed lands intending to enter the same as a homestead can claim is the protection of his possession under the permission of the government to enter thereon in advance of the public surveys.

In Washington & Idaho Railroad Company v. Osborn, 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 356, it is true, it was held that such a settler had a "possessory claim" which was protected by an act of Congress granting to railroad companies rights of way over public lands in a territory, but it was so held because the act conferred upon the Territorial Legislature the power to provide for the manner in which private lands and "possessory claims on lands of the United States" might be condemned. A similar case was Spokane Falls & N. Railway Company v. Ziegler, 167 U. S. 65, 17 Sup. Ct. 728, 42 L. Ed. 79. So it was held by this court in Holmes v. United States, 118 Fed. 995, 55 C. C. A. 489, under the act of Congress of March 3, 1891,[1] authorizing the President to withdraw lands for forest reserves, but protecting against reservation all lands embraced in any legal entry, or covered by any lawful filing of record, or upon which any valid settlement had been made pursuant to law, whereof the statutory period within which to make entry of record had not expired, that unsurveyed land in the possession of a settler who had made his home thereon in good faith, with the intention to make a homestead entry thereon when surveyed, was land on which a "valid settlement" had been made within the exceptions intended by the act.

We have to inquire, therefore, whether any right to the protection of his possession was given to the defendant in error by any other provision of the reclamation act or by any other statute of the United States. We search in vain to find in the language of any provision of the act itself any expression of the intention of Congress to recognize or protect such a right. It is not to be found by implication in the clause which provides for condemnation, for the power of condemnation was necessary to be conferred in order to extinguish such rights in lands as might have become vested by settlement initiated or perfected under the land laws, and it is not to be presumed that the power so granted was intended for any other purpose. Its exercise is expressly limited to cases "where in carrying out the provisions of this act it becomes necessary to acquire any rights or property." It is not to be found in section 2 of the act of June 27, 1906, c. 3559, 34 Stat. 519 (U. S. Comp. St. Supp. 1907, p. 520), cited by the defendant in error, which provides:

"That wherever the Secretary of the Interior in carrying out the provisions of the reclamation act shall acquire by relinquishment lands covered by a bona fide unperfected entry under the land laws of the United States, the entryman upon such tract may make another and additional entry, as though the entry thus relinquished had not been made."

This refers to entries so initiated under the land laws as to confer upon the entryman vested rights, which rights are voluntarily relinquished. Otherwise there would be no occasion for the enactment. A settler on unsurveyed public land has nothing to relinquish, and he would have the right, in the absence of any such statute, to

[1] Chapter 561, § 24, 26 Stat. 1103 (U. S. Comp. St. 1901, p. 1537).

make "another and additional entry" on the public land. Nor is it to be found in section 3 of the act of May 14, 1880, c. 89, 21 Stat. 141 amended by Act June 6, 1900, c. 821, 31 Stat. 683 (U. S. Comp. St. 1901, p. 1393), which gives to a settler who intends to claim a homestead the same time to file his homestead application and perfect his original entry in the United States Land Office as is now allowed to settlers under the pre-emption laws to put their claims on record, and provides that their right shall "relate back to the time of settlement, the same as if they had settled under the pre-emption laws." This gives no right before an entry has been perfected. It provides that then the right shall relate back to the time of settlement the same as if settlement had been made under the pre-emption laws. In Russian American Packing Co. v. United States, 199 U. S. 570, 26 Sup. Ct. 157, 50 L. Ed. 314, a case which arose long after that act went into effect, it was said that there is no vested right in a pre-emptioner until the purchase money has been paid.

We are of the opinion that the possession of the defendant in error of the land in controversy was of grace and not of right, that he has acquired no right which he can set up as against the United States, and that it was not the intention of Congress, as expressed in the reclamation act or elsewhere, that the progress of reclamation should be burdened or impeded by unnecessary litigation.

The judgment is reversed, and the cause is remanded, with instructions to sustain the demurrer to the answer.

NOTE. The following is the opinion of Whitson, District Judge, filed in the court below:

WHITSON, District Judge. Plaintiff sues in ejectment to recover the east half (E. ½) of section 12, township 21 north, of range 11 east, and for damages.

In addition to the usual averments, it is alleged that these lands have heretofore been withdrawn, and at all times in the complaint mentioned were withdrawn, from entry, location, or settlement of any kind or character. The only date mentioned in the complaint is October, 1905, from which it may be concluded that any withdrawal applicable to the subject-matter of the action was made on or about that time.

The amended answer sets up that possession is sought for carrying out the intent of the act of Congress of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1907, p. 511), commonly known as the "Reclamation Act," and that the defendant, prior to the 29th day of April, 1891, while the lands were unsurveyed, and prior to withdrawal by the Secretary of the Interior, being duly qualified, settled upon the east half of the northeast quarter of the northeast quarter (E. ½ of N. E. ¼ of N. E. ¼), the east half of the southeast quarter of the northeast quarter (E. ½ of S. E. ¼ of N. E. ¼), the north half of the southeast quarter (N. ½ of S. E. ¼), and the northeast quarter of the southwest quarter (N. E. ¼ of S. W. ¼), of said section, as a homestead; that he has ever since resided upon and occupied, and now resides upon, occupies, and claims, the same under the laws granting homesteads to actual settlers upon the public domain; that he has complied with and is entitled to the benefits of said laws, and may lawfully file upon, enter, and receive title to that part of the section last above described when the surveys made since his settlement shall have been approved, since no authority exists for the prosecution of the action or for depriving him of the rights so initiated. The northeast quarter of the southwest quarter is not involved. To that extent there is no issue raised. The north half of the southeast quarter is a part of

the east half of the section, but as to the east half of the northeast quarter of the northeast quarter, and the east half of the southeast quarter of the northeast quarter, those tracts are not recognized legal subdivisions, and no statute has been pointed out whereby entry could be made thereof under the laws of the United States. The issue presented, it will be seen, involves 80 acres only.

The statement of what is proposed, if the allegations of the answer be true, at once challenges attention and invites the most careful scrutiny. If the plaintiff should prevail, the defendant's improvements would be taken without compensation; his possessory right would be confiscated; his hopes of ultimately acquiring the title would be destroyed; and he would be compelled to bid farewell to a home which he has occupied for 17 years, relinquishing the land over which he has exercised dominion by virtue of a statute of the United States, and in full compliance with its provisions, while standing impotently by to see it devoted to other uses, a result which at the time of his settlement he had no reasonable ground to anticipate. Considering that the court is asked to become an instrument of injustice, it is to be remarked that it will only do so in obedience to rules of statutory construction demanding an interpretation of existing statutes favorable to such an end, for surely the proceeding has neither necessity nor merit for its justification, as I shall presently show.

That Congress has power by appropriate legislation to withdraw, or authorize the withdrawal of, public lands which have been offered for sale, or such as are subject to settlement or entry under the public land laws, may be conceded. That the claims of settlers in good faith who have entered thereon pursuant to existing laws may be disregarded, and that, in the absence of any saving clause, they are remediless, cannot be denied. That the government as a landed proprietor has the same rights and remedies as private individuals for the protection of its property, including the right to recover possession, was long ago settled.

These contentions made on behalf of the government are sustained by a long line of authorities. Camfield v. United States, 167 U. S. 525, 17 Sup. Ct. 864, 42 L. Ed. 260; United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110; Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668; Yosemite Valley Case, 15 Wall. 77, 87, 21 L. Ed. 82; Campbell v. Wade, 132 U. S. 38, 10 Sup. Ct. 9, 33 L. Ed. 240; Shiver v. United States, 159 U. S. 495, 16 Sup. Ct. 54, 40 L. Ed. 231; Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920; Russian American Packing Co. v. United States, 199 U. S. 570, 26 Sup. Ct. 157, 50 L. Ed. 314; Wagstaff v. Collins, 97 Fed. 3, 38 C. C. A. 19.

But the disposal of the public lands is vested solely in Congress by the Constitution. Irvine v. Marshall et al., 20 How. 558, 15 L. Ed. 994; Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; United States v. Fitzgerald, 15 Pet. 407, 10 L. Ed. 785.

And it is to the statutes applicable to the facts here presented that reference must be made, for it will not be contended that a law may be suspended, thereby denying to a settler rights which have been expressly conferred by legislation.

Referring to such claims in Russian American Packing Company v. United States, supra, it was observed:

"Such a vested right, under the pre-emption laws, is only obtained when the purchase money has been paid, and receipt from the proper land officer given to the purchaser. Until this has been done, it is competent for Congress to withdraw the land from entry and sale, though this may defeat the inchoate right of the settler."

Again, in Buxton v. Traver, supra, in discussing the occupancy of a pre-emptor of unsurveyed public lands, we find the following:

"A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase."

Continuing, and speaking of the filing, and the acts required of the pre-emptor, it was said:

"Until then he has no estate in the land which he can devise by will, or which, in case of his death, will pass to his heirs at law. * * * The

United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject.  *   *   *"

It was declared, if the required steps are not taken, that:

"The title to the land remains unaffected, and subject to the control and disposition of the government, as before his occupancy."

In the former case withdrawal was made by the President in virtue of express authority conferred by Congress, while in the latter the claimant died before the lands were surveyed, and it was held that his heirs did not succeed to the title by virtue of his claim initiated on unsurveyed land. It was evidently considered a personal privilege which did not descend under the provisions of the statute; but, whether so considered, it fully appears that in both cases the supremacy of Congress was strictly observed; in the one by express language, and in the other by referring to "the control and disposition of the government," having in view, of course, the only branch of the government authorized to act in the premises. The power vested in Congress to dispose of the public lands carries with it the power to withdraw privileges extended, and, until such rights as have been granted are withdrawn by the only authority which may confer them, they still exist. A different rule prevails, it is true, between the government and a claimant, and between those who would contest among themselves for the prior right of purchase or entry. This distinction was recognized by the Circuit Court of Appeals for this circuit in Holmes v. United States, 118 Fed. 995, 55 C. C. A. 489. But while recognizing it, the Circuit Court was reversed for disregarding the claim of a homestead settler upon the public domain, where the question was presented by an action for possession, as here, upon the ground that there had been no authorized withdrawal of the land which could affect the claim of the settler on unsurveyed land. The status of the land was described by the court as follows:

"It is conceded that the land in controversy had not, prior to the date of the proclamation of the President, been embraced in any legal entry or covered by any lawful filing of record in the United States Land Office.  *   *   *"

An explicit statement of the views of the court appears in the syllabus, from which the following is taken:

"While the mere occupancy and improvement of public land give no right as against the United States, yet the occupancy and improvement of unsurveyed public land, in good faith, by a settler who makes it his home, with the intention of making entry of the same under the homestead or pre-emption laws when it shall have been surveyed, has always been recognized as lawful, and as giving the settler a possessory claim, which entitles him to preference when the land is opened for entry; and, in view of such recognition, such a settler must be regarded as having made a 'valid settlement pursuant to law,' within the meaning of the President's proclamation of December 20, 1892, setting apart, as a forest reservation, certain public lands in California, but excepting all lands within the prescribed boundaries 'which may have been prior to the date hereof embraced in any legal entry or covered by any lawful filing duly of record,  *   *   * or upon which any valid settlement has been made pursuant to law'; and under the rule of the later decisions of the Supreme Court, that the withdrawal of lands from entry by the Interior Department as being within a railroad grant did not defeat the rights of subsequent settlers thereon where the withdrawal was in fact unauthorized, it is immaterial that the land of such settlers had been so withdrawn, and had never been formally restored to the public domain."

This case is relied upon to sustain the action; but it is an authority sustaining the defendant's position unless Congress has authorized the withdrawal upon which recovery must rest.

Of that only, it remains to inquire. The inquiry leads to the construction of the acts relating to homesteads and those providing for the reclamation of arid lands. The defendant has been pertinaciously designated by counsel as a squatter, and to sustain that view those decisions of the Supreme Court have been cited which hold that no length of occupancy or extended improvements will give one who, without license, goes upon public lands, the right to claim as against the government. Sparks v. Pierce et al., 115 U. S. 408, 6

Sup. Ct. 102, 29 L. Ed. 428; Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423.

The familiar provisions of the homestead law relating to settlement, and the like, need only be referred to, but Act May 14, 1880, c. 89, § 3, 21 Stat. 141, amended by Act June 6, 1900, c. 821, 31 Stat. 683 (U. S. Comp. St. Supp. 1907, p. 1393), 6 Fed. St. Ann. 301, is applicable. It is there provided:

"That any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States Land Office as is now allowed to settlers under the pre-emption laws to put their claims on record, and his right shall relate back to the date of settlement, the same as if he settled under the pre-emption laws."

A settler under the pre-emption laws was required to file his declaratory statement "within three months from the date of the receipt at the district land office of the approved plat of the township embracing such pre-emption settlement. Section 2266, Rev. St. amended by Act March 3, 1891, c. 561, § 4, 26 Stat. 1097 (U. S. Comp. St. 1901, p. 1381).

The statute of 1880 has been construed as conferring rights concerning public lands, whether surveyed or unsurveyed, which did not exist prior to its passage, and as giving express authority for making settlement upon such lands under the homestead laws, giving the settler the right to claim, as of the date of his settlement, by relation. Maddox v. Burnham, 156 U. S. 545, 15 Sup. Ct. 448, 39 L. Ed. 527.

Referring to a pre-emption settler in Buxton v. Traver, supra, it was said: "He has been permitted by the government to occupy a certain portion of the public lands, and therefore is not a trespasser, on his statement that when the property is open to sale he intends to take the steps prescribed by law to purchase it; in which case he is to have the preference over others in purchasing; that is, the right to pre-empt it."

Webster defines "squat" as follows:

"To settle on a piece of land without permission or right, as on public land, or in the unfenced outskirts of a town."

A squatter is an intruder; one who enters without legal authority; he is a trespasser ab initio. Bouvier's Law Dictionary; Words & Phrases, tit. "Squatter," vol. 7, p. 6619.

The defendant, therefore, is not a squatter. His possession was lawful at the time he initiated it. This is an important consideration, for, if he be a trespasser pure and simple, he has no defense. The policy concerning the disposal of the public lands has always been to encourage settlements. Those who have reclaimed the wilderness, who have extended the frontier, have been deemed worthy of the utmost consideration, and in construing the law, if it has been put to severe tension or its letter violated by the Interior Department, it has been out of solicitude for those who have made actual settlements upon public lands, and have shown an earnest desire to comply with the provisions of law. The homestead law has been invariably referred to as a beneficent boon conferred by the bounty of the government, and the homestead settler has ever been protected when accepting the invitation thereby extended, while claiming in good faith. It has never been the practice to molest or hinder the fullest assertion of the right to acquire lands under this law. With this well-defined policy, and the principle that Congress only may withdraw an invitation by it extended, in view, we turn to the reclamation act, and in doing so it is to be observed that these statutes are in pari materia.

The defendant's settlement antedates the passage of the reclamation act by about 11 years. The purpose which runs through the statutes relating to homesteads is intensified in the legislation for reclaiming arid lands. Homesteads are expressly protected under the latter act, and it is a matter of public notoriety that by the later legislation it was intended to still further aid those of our citizens who would reside upon, reduce to a state of cultivation, and improve such lands as can only be rendered susceptible of cultivation by means of the works expressly authorized for their irrigation. Whether Con-

gress intended that the Secretary of the Interior should, when the public interests require, withdraw lands from entry to which possessory rights had lawfully attached, and for which the right to enter had been initiated, turns upon the interpretation to be given the language which follows, found in section 3 (Act June 17, 1902, c. 1093, 32 Stat. 388 [U. S. Comp. St. Supp. 1907, p. 513]):

"That the Secretary of the Interior shall, before giving the public notice provided for in section four of this act, withdraw from public entry the lands required for any irrigation works contemplated under the provisions of this act, and shall restore to public entry any of the lands so withdrawn when, in his judgment, such lands are not required for the purposes of this act; and the Secretary of the Interior is hereby authorized, at or immediately prior to the time of beginning the surveys for any contemplated irrigation works, to withdraw from entry, except under the homestead laws, any public lands believed to be susceptible of irrigation from said works: Provided, that all lands entered and entries made under the homestead laws within areas so withdrawn during such withdrawal shall be subject to all the provisions, limitations, charges, terms, and conditions of this act; that said surveys shall be prosecuted diligently to completion, and upon the completion thereof, and of the necessary maps, plans, and estimates of cost, the Secretary of the Interior shall determine whether or not said project is practicable and advisable, and if determined to be impracticable or inadvisable he shall thereupon restore said lands to entry; that public lands which it is proposed to irrigate by means of any contemplated works, shall be subject to entry only under the provisions of the homestead laws in tracts of not less than forty nor more than one hundred and sixty acres, and shall be subject to the limitations, charges, terms, and conditions herein provided: Provided, that the commutation provisions of the homestead laws shall not apply to entries made under this act."

The construction relied upon by counsel is that, for "lands required for irrigation works," a homestead claim may be ignored, notwithstanding the express provisions that no withdrawal may be made as against homestead entries generally upon lands to be irrigated. This construction is extremely technical and literal. It would lead to the conclusion that one who had actually reclaimed his land might be deprived of it unless it should fall within the limits of some contemplated irrigation scheme. It would give the homesteader whose land is to be irrigated the advantage of one whose land needs no irrigation and who is in no way interested in the contemplated works. The fact that lands reclaimed under the act can only be taken under the homestead law supplies a forceful reason for the inference that it was not intended to interfere with homestead settlers. This law being so distinctly preserved, it cannot be concluded that there was an intention to place one who should be so unfortunate as to have by his own enterprise reclaimed his land, even though he may not have had an opportunity to make his entry in the land office, at a distinct disadvantage with one who had never attempted reclamation, or had not even settled or made an entry. That it was not so intended is abundantly justified, also, by the provisions of section 4, requiring that those who receive the benefits of irrigation shall ratably contribute to the cost; and by those of section 6, which provide for turning the works over to the persons who shall have paid therefor; and also by the authority conferred by section 7 to condemn property needed for any particular enterprise. If anything further were needed to confirm this construction, it may be found in the amendment of June 27, 1906, c. 3559, § 2, 34 Stat. 519 (U. S. Comp. St. Supp. 1907, p. 520), from which the following quotation is made:

"That wherever the Secretary of the Interior, in carrying out the provisions of the reclamation act, shall acquire by relinquishment lands covered by a bona fide unperfected entry under the land laws of the United States, the entryman upon such tract may make another and additional entry, as though the entry thus relinquished had not been made."

Again, section 5 of the amendatory act protects the entryman under the desert land act. Thus it would appear that every claimant and entryman, if plaintiff's theory can prevail, has been protected except the particular homesteader who would have needed no aid.

While it must be conceded that if Congress has clearly made manifest its intention to accomplish that which is here contended for it is competent to do so, yet reading all the acts together relating to the subject, the holding must be that it was not intended to authorize the Secretary of the Interior to withdraw lands to which it would be held that homestead rights had attached, but for the passage of the reclamation statutes, but rather to anticipate future claims which might embarrass the establishment of works in contemplation. So the language of section 3 would seem to indicate, for withdrawal is to be made before giving the scheme publicity. The rule applicable here may be briefly illustrated. "When there are two provisions of law in the statutes relating to the same subject, effect is to be given to both if practicable." Chicago Railway Co. v. United States, 127 U. S. 406, 8 Sup. Ct. 1194, 32 L. Ed. 180. "Where two statutes cover in whole or in part the same matter, and are not absolutely irreconcilable, and no purpose to repeal the earlier act is expressed or clearly indicated, the court will, if possible, give effect to both." Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614. "No construction should be given to a statute that would inevitably lead to absurd results when this can be sensibly avoided." Interstate Drainage & Investment Co. v. Board of Commissioners, 158 Fed. 274, 85 C. C. A. 532. See, also, The Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167; United States v. Freeman, 3 How. 556, 11 L. Ed. 724; United States v. Healey. 160 U. S. 145, 16 Sup. Ct. 247, 40 L. Ed. 369; United States v. New York, 160 U. S. 609, 16 Sup. Ct. 402, 40 L. Ed. 551.

Counsel for the plaintiff desire to know what it is that the plaintiff ought to pay for in this case. This is the answer: Inasmuch as it seeks to take from this defendant his improvements, deprive him of possession, and apply them to the use of persons who are to profit by carrying on the irrigation scheme for which this land is demanded, and they are to pay the actual cost, the defendant ought not to be required to furnish without compensation that which is a necessity and a benefit to those persons. It has been held, under the act of 1875 granting rights of way to railroads over the public domain, that on unsurveyed land one in possession, even under the pre-emption law, is entitled to damages for his possession. Spokane Falls & Northern Ry. Co. v. Ziegler, 167 U. S. 65, 73, 17 Sup. Ct. 728, 42 L. Ed. 79; Washington & Idaho Railroad Co. v. Osborn, 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 356. And the possessory rights and improvements of those in possession have repeatedly been made the subject of the exercise of the right of eminent domain. Washington & I. R. Co. v. Osborne, 2 Idaho (Hasb.) 557, 21 Pac. 421; Larson v. Oregon Ry. & Nav. Co., 19 Or. 240, 23 Pac. 975; Yakima County v. Tullar, 3 Wash. T. 393, 17 Pac. 885; Johnson v. Bridal Veil Lumbering Co., 24 Or. 182, 33 Pac. 528.

It would be a poor requital to the defendant, for the wasted days of labor, and the weary years of effort, to be assured that the homestead law is one of great beneficence, even though he might not be able to see the justice of appropriating his property for the benefit of others no more meritorious than himself. The semiprivate enterprise of reclaiming arid lands carried on by the government, where it is taking property for the use of others, in the absence of any express authority of Congress, places the plaintiff in the same situation as a private individual. It has the right of eminent domain. Sess. Laws Wash. 1905, p. 180. c. 88. This it should invoke.

The answer sets up a partial defense, and, as the demurrer is general, it must be overruled. If any issue of fact is to be raised by the pleadings, it may come on for trial at the May term in North Yakima.